THOMAS, Judge.
John Lambert, the former band director at Flomaton High School (“the school”), appeals a decision of, a hearing officer affirming the decision of the Escambia County Board, of Education (“the Board”) to terminate his employment, pursuant to the Students First Act (“the SFA”), § 16-24C-1 et seq., Ala.Code 1975.[1] We affirm.
The record indicates the following. On May 11, 2012, a custodian at the school found a firearm in a case located inside a bag that was on top of Lambert’s desk in his office, which was located in the band room on the school’s campus. Lambert was employed by the Board as the part-time band director at the school at that time. It was undisputed that the band room and Lambert’s office had both been locked and that the custodian had unlocked the doors to those rooms with the key the school had issued to her. The custodian contacted school personnel regarding her discovery of the firearm, who, in turn, contacted Scott Hammond, the school’s principal. Hammond entered Lambert’s office; he looked inside the bag placed on Lambert’s desk and saw a case containing a firearm containing a fully loaded ammunition clip and an additional fully loaded ammunition clip. Hammond looked through the other contents of the bag and noticed that, in addition to the firearm and the two ammunition clips,[1] it contained Lambert’s checkbook and other personal effects. Lambert was not on campus on May 11, 2012, because he was with a group of band students on an overnight band trip to Atlanta; Lambert and the band students were set to arrive back on the school’s campus late on May 12, 2012. Hammond placed the case containing the firearm and ammunition clips inside the pocket, of his pants and traveled to his office, where he proceeded to lock the door and to telephone Randall Little, the interim superintendent of the Board at that time.
Hammond testified that Little told him to bring the firearm and ammunition clips to the Board’s central office, which he did. Hammond further testified that Little also requested that Hammond be present on May 12, 2012, to meet the buses returning from the overnight band trip so that he could speak with Lambert regarding the discovery of the firearm and ammunition clips in his office. Hammond testified that ,on May 12, 2012, he spoke with Lambert regarding the discovery of the firearm and ammunition clips, that Lambert confirmed that the firearm and ammunition clips were his, and that they set up a meeting, to discuss the incident for May 14, 2012.
Ón May 14, 2012, Lambert met with Hammond at the school’s campus to discuss the discovery of his firearm on campus and the potential consequences. At this meeting, Lambert again confirmed that the discovered firearm and ammunition clips were his and that he had inadvertently left them inside his bag inside *754 the locked office, inside the locked band room. He explained that he had forgotten that the firearm and ammunition clips were inside the bag when he brought the bag on the school’s campus.’ Hammond informed Lambert that Board Policy Number 826 entitled “Board Employees and Weapons” states: “No employee, with the exception of any law enforcement personnel, will be in possession of an unauthorized weapon on any school premises, including school vehicles, or at any school-planned activity. Violation of this policy will result in suspension or dismissal of the employee.” He further gave Lambert a copy of Board Policy Number 826 and informed him that his options were to resign or to potentially be suspended or terminated from his employment due to his violation of Board Policy Number 826. Lambert testified that, although he knew that the school was a weapon-free campus, he was unaware of Board Policy Number 826 before May 14,2012,
Following his meeting with Hammond, Lambert hand-delivered his resignation on May 14, 2012. However, on May 15, 2012, Lambert rescinded his resignation. Subsequently, Little placed Lambert on administrative leave and mailed him a letter dated May 18, 2012, informing him that he had been placed on administrative leave. On June 1, 2012, Little sent Lambert a letter informing him that his recommendation to the Board was to terminate Lambert’s employment and that Lambert had the right to ask for a hearing. See § 16-24C-6(b), Ala.Code 1975. Lambert requested a public hearing before the Board in a letter dated June 11, 2012. On July 23, 2012, the parties conducted a hearing before the Board. At the start of the hearing, the Board summarily denied Lambert’s four motions to dismiss and his motion to suppress.
The hearing detailed the aforementioned facts, which are largely undisputed. Additionally, Little testified that Rule 290-3-1-.02(l)(b)(3), Ala. Admin. Code (Bd. Of Educ.), which is one of the regulations promulgated by the State Board of Education that all school boards must apply, mandates that school boards “[a]dopt and enforce a uniform policy prohibiting all persons, other than authorized law enforcement personnel, from bringing or possessing any deadly weapon or dangerous instrument on school property and prescribing specific penalties for students and school personnel who violate this policy, notwithstanding any criminal penalties which may also be imposed.” He explained that Board Policy Number 826 was the Board’s, response to the aforementioned mandatory administrative regulation and that Board Policy Number 826 applied only to school personnel because, he said, there was a separate policy regarding weapons applicable to students. Little further testified that the school had been a weapons-free school since 1994, that the student handbook provided to students and personnel alike also indicates that weapons are prohibited on school property, and that the school has numerous signs on its entrance doors that state: “no weapons, no alcohol, no drugs, no tobacco, zero tolerance.”
Little opined that “one of the utmost responsibilities of the Escambia County Board of Education ... is to make sure that our campuses are safe and secure for our students and, of course, our personnel.” He further testified that he had recommended Lambert’s dismissal, instead of suspension, despite the fact that Lambert had been a good employee without any prior disciplinary incidents, based on the following:
“The first reason is that we do not hold all of our students — which unfortunately this board, over the years that I *755 have been employed by this district, has had to make very difficult decisions. We have held our students to be accountable and responsible to our campuses when it comes to weapons. We do have — it is promulgated. All of our campuses and school functions, et cet-era, are weapons free, and our students are held accountable.
“Our employees are also — should be held accountable as well, particularly when they bring a loaded weapon on campus. This weapon, when found, was fully loaded. Not only was it fully loaded, it had a second clip that was fully loaded, and it was brought on school campus by ... Lambert and left on school campus by ... Lambert. This created unfortunately a very unsafe environment. Fortunately, in our case, no harm came, but it did create the environment to put people in harm’s way on our campus. And, of course, thank goodness that nothing did come in harm’s way, but if it had it would definitely be unfortunate — we’d be having a different hearing today.
“And also, as superintendent of education, I am bound by the law, by Administrative Code to take full action and full responsibility for said actions. And I cannot turn and sweep this under the carpet. I must take serious action, even though how unfortunate it may be.”
Lambert testified that the firearm was his and that he had had a permit to carry it since he was 21 years old.[2] He further testified that he had graduated from Troy University in 1973 and that he had been teaching music since that time without any disciplinary action instituted against him by any school board by which he had been employed. He also stated that he had been in the military for 27 years without any form of disciplinary action being instituted against him by the military. Lambert opined that the Board should not terminate his employment because, he argued, he had “thirty years service to this board and thirty-eight years experience all together.” However, he admitted that, “unintentionally, [he had] violated [Board] Policy [Number] 826.” Lambert also testified that he had received a student handbook, that he was familiar with the signs on campus that indicate that no weapons are allowed on campus, and that he knew that the school had a zero-tolerance policy regarding weapons because, he said, he had seen the signs “many times.”
Ten character witnesses testified on behalf of Lambert, each testifying that he was a man of good moral character, a good teacher, and that he deserved to be suspended as opposed to dismissed due to his violation of Board Policy Number 826. The parties also stipulated that 18 additional character witnesses were willing to testify to Lambert’s good character. Furthermore, Hammond testified that Lambert had been a good employee without any prior disciplinary incidents in the seven years he had been Lambert’s supervisor and that Lambert had received positive evaluations throughout his employment at the school. Thus, the evidence was undisputed that Lambert had been a model employee until the time that he had unintentionally violated Board Policy Number 826 by bringing a loaded firearm onto the school’s campus and locking it in his office while he was away on an overnight band trip.
At the conclusion of the evidence presented on July 23, 2012, the Board went into executive committee to discuss the action to be taken in response to Lambert’s unintentional violation of Board Policy Number 826. The Board members vot *756 ed six in favor of termination and one in favor of suspension. Accordingly, Lambert was terminated from his employment with the Board. He timely appealed the Board’s decision, seeking review by a hearing officer pursuant to § 16-24C-6(e) of the SFA.
The hearing officer conducted a hearing at which he heard the arguments of the parties but received no' new evidence. However, the parties agreed to' supplement the record because several exhibits, as well as the Board’s decision, were not contained in the original record before the hearing officer. The hearing officer also denied Lambert’s four motions to dismiss and his motion to suppress. On December 24, 2012, the hearing officer issued a decision affirming the Board’s termination of Lambert’s employment, In affirming, the Board’s decision to dismiss Lambert, the hearing officer stated: “In view of [Lambert’s] service of 37 years and his exemplary record as evidenced by the many witnesses examined, it is the opinion of this Hearing Office[r] that a lesser penalty than termination should have been imposed. However, the Students First Act of 2011 provide[s] that the Hearing Officer may affirm or reverse the decision of the Board only, no modification is authorized.” Lambert timely appealed the hearing officer’s affirmance of the Board’s termination of his employment to this court pursuant to § 16-240-12, Ala,Code 1975.

Discussion

Lambert argues on appeal that the hearing officer erred in denying his motions to dismiss, in denying his motion to suppress, and in affirming the Board’s termination of his employment. Specifically, in regard to his third argument, he contends that the hearing officer afforded too much deference to the Board’s decision and failed to recognize that he was allowed to reverse the decision and remand the action for imposition of a lesser punishment should he conclude that, based on the facts of the case, a lesser punishment was warranted. We will consider each argument in turn.
Initially, we look to the hearing officer’s denial of the motions to dismiss and the motion to suppress, because these are threshold issues to be determined by this court. Lambert filed four motions to dismiss, which the Board and the hearing officer summarily denied. Those motions to dismiss argued as follows: 1) that the phrase “unauthorized weapon” as contained in Board Policy Number 826 was vague and did not provide notice that a lawfully owned firearm was unauthorized; 2) that Board Policy Number 826 imper-missibly infringed upon Lambert’s Second Amendment right to bear arms because he had a valid permit to possess the firearm; 3) that Board Policy Number 826 violates § 11-80-11, Ala.Code 1975; and 4) that the word “will” as contained in Board Policy Number 826 is vague and lacks clarity regarding what punishment will follow a violation.
We first turn to Lambert’s arguments regarding the allegedly vague terms “will” and “unauthorized weapon,” as used in Board Policy 826; because these arguments are similar, we will consider them together. Board Policy Number 826 states, in its entirety: “No.employee, with the exception of any law enforcement personnel, will be in possession of an unauthorized weapon on any school premises, including. school vehicles, or at any school-planned activity. Violation of this policy will result in suspension or dismissal of the employee.” Lambert argues that the terms “will” and “unauthorized weapon” in the policy are so vague that the policy failed to put him on “notice of what is prohibited and what consequence w[ould] follow for an unintentional violation” of the policy. Essentially he argues that, be *757 cause Board Policy Number 826 lacked clarity, the policy is invalid because it infringed on his constitutional right to bear arms. He cites Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), in support of his arguments.
We acknowledge that laws and policies promulgated by the State and school boards may generally limit a person’s constitutional rights to ensure the safety of students and personnel on a public-school campus but that such policies must be drafted with precision and clarity in order to accomplish the desired goal of ensuring safety while recognizing every citizen’s constitutional right to know what conduct is deemed prohibited and what consequence could be imposed for a violation of the law or policy. See Rule 290-3-l-.02(l)(b)(3), Ala. Admin. Code (Bd. Of Edue.). A law or policy is considered vague if it is so uncertain as to fail to put a citizen on notice of what action is prohibited by the law or policy. Village of Hoffman Estates, 455 U.S. at 495.
‘“To withstand a challenge of vagueness, a statute must: 1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and, 2) provide explicit standards to those who apply the laws. Grayned [v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972)].
“‘“[T]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for ‘[i]n most English words and phrases there lurk uncertainties.’ Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.”
“ ‘Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). “A defendant who challenges a statute on the ground of vagueness ‘must demonstrate that the statute under attack is vague as applied to his own conduct, regardless of the potentially vague applications to others.’ ” Senf v. State, 622 So.2d 435, 437 (Ala.Cr.App.1993), quoting Aiello v. City of Wilmington, 623 F.2d 845, 850 (3rd Cir.1980). (Emphasis supplied [in Culbreath ]).’ ”
State v. Randall, 669 So.2d 223, 225-26 (Ala.Crim.App.1995) (quoting Culbreath v. State, 667 So.2d 156, 158-59 (Ala.Crim.App.1995)).
In this case, Lambert acknowledged that he was aware that the school was a weapons-free campus and that the Board had a zero-tolerance policy regarding weapons on campus. Thus, he was aware that having a loaded firearm on the school’s campus violated school policy. Moreover, a reading of Board Policy Number 826 clearly indicates that a teacher who brings a loaded firearm onto campus without authorization will face either termination or suspension. Accordingly, we cannot conclude that Board Policy Number 826 was unconstitutionally vague as it applied to Lambert under the specific facts of this case.
Next, we turn to Lambert’s arguments that the hearing officer erred in denying his motion to dismiss because, he contends, Board Policy Number 826 violated former § ll-80-ll(a), Ala. Code 1975,[3] *758 and the Second Amendment to the United States Constitution. We find these arguments to be without merit.
Former § ll-80-ll(a) stated in its entirety:
“(a) No county or municipal corporation, instrumentality, or political subdivision thereof, by ordinance, resolution, or other enactment, shall regulate in any manner gun shows, the possession, ownership, transport, carrying, transfer, sale, purchase, licensing, registration or use of firearms, ammunition, components of firearms, firearms dealers, or dealers in firearm components.”
However, as Little testified before the Board, Rule 290-3-l-.02(l), which mandates that each school board adopt a policy prohibiting weapons on public-school campuses, states, in pertinent part:
“(1) Safe School Equipment and Facilities, Laboratories, and Policies.
“(a) Safety precautions must be implemented and adequate facilities must be provided for implementations of programs prescribed by [State Department of Education] Bulletin(s).
“(b) Effective with the 1995-96 school year and thereafter, local boards of education must:
[[Image here]]
“3. Adopt and enforce a uniform policy prohibiting all persons, other than authorized law enforcement personnel, from bringing or possessing any deadly weapon or dangerous instrument on school property and prescribing specific penalties for students and school personnel who violate this policy, notwithstanding any criminal penalties which may also be imposed.”
(Emphasis added.) Moreover, § 16-2-2, Ala.Code 1975, states that “[t]he duties of the Department of Education shall be, through its personnel, to assist in executing the policies and procedures authorized by law and by regulations of the State Board of Education.” Thus, the Board was required to regulate any unauthorized fire-aim on school property. Accordingly, we cannot conclude that the hearing officer erred in denying Lambert’s motion to dismiss based on former § ll-80-ll(a), a general statute.
Now we turn to Lambert’s Second Amendment argument regarding his motion to dismiss. The Second Amendment provides: “A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.” However, the United States Supreme Court has acknowledged that, “[l]ike most rights, the right secured by the Second Amendment is not unlimited.” District of Columbia v. Heller, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). In Heller, the Supreme Court stated: “Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications bn the commercial sale of arms.” See also McDonald v. City of Chicago, 561 U.S. 742, 786, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) (repeating the assurances made “clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as ‘pro *759 hibitions on the possession of firearms by felons and the mentally ill,’ ‘laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.’ [Heller, 554 U.S.] at 626, 128 S.Ct., at 2816-2817.”). Accordingly, we affirm the hearing officer’s denial of Lambert’s motion to dismiss based upon his Second Amendment argument.
Next, Lambert argues that the hearing officer erred in denying his motion to suppress because, he says, the record indicates that there was “no legitimate work-related justification for the search” of his office and his bag and, thus, the search violated his Fourth Amendment right to be free from unlawful searches and seizures. We find Lambert’s argument to be misguided under the facts of this case because, we conclude, the exclusionary rule relied upon in his motion to suppress is inapplicable in this civil case. In Berryhill v. State, 372 So.2d 355, 356 (Ala.Civ.App.1979), this court noted that “a motion to suppress, or the exclusionary rule, is available only in criminal proceedings.” However, this court proceeded to explain that the exclusionary rule has been extended to apply to certain civil proceedings, such as a civil forfeiture-of-property proceeding, because such a proceeding “is criminal in nature though civil in form.” Id. The present case is not criminal in nature; rather, it relates to an administrative proceeding regarding a violation of a board policy for which no criminal action could result.[4] Accordingly, we conclude that the hearing officer’s denial of the motion to suppress is due to be affirmed because the exclusionary rule is inapplicable to this case.
Finally, Lambert contends that the hearing officer erred in affirming the Board’s decision to terminate his employment. His final argument is twofold. Specifically, he argues first that the hearing officer afforded excessive deference to the Board’s decision and second that the hearing officer failed to recognize that he was .allowed to reverse the decision and remand the action for imposition of a lesser punishment.
Section 16-24C-6(e), Ala.Code 1975, which is the key.provision at issue in this appeal, states, in pertinent part:
“(e) An employee who is terminated following a hearing requested by the employee may obtain a review of an adverse decision by filing a written notice of appeal to the State Superintendent of Education within 15 days of receipt of the decision.... The State Superintendent of Education ... shall refer the appeal to the Executive Director of the Alabama State Bar Association who shall obtain a panel of neutrals and administer the hearing officer selection process as is hereinafter provided. The notice of appeal shall state the grounds upon which it is based. A copy of the notice shall be simultaneously served by the employee on the chief executive officer of the employer .... Upon receiving notice of the employee’s appeal, the employer shall compile and file the record of administrative proceedings, including any hearing transcript, with the hearing officer within 20 days after its receipt of the notice of appeal unless the time is extended by the hearing officer for good cause' shown. Except as hereinafter provided, the appeal shall be submitted to the hearing officer. The hearing officer shall hold a hearing. Deference is given to the decision of the envploy *760 er. A final ruling, either affirming or reversing the decision of the employer, shall be rendered within five days after the hearing.”
(Emphasis added.)
The plain language of the statute provides that “[djeference is given to the decision of the employer.” Id. “Deference” means “respect and esteem due a superior or an elder” or “affected or ingratiating regard for another’s wishes.” Merriam-Webster’s Collegiate Dictionary 326 (11th ed. 2003). Moreover, § 16-24C-2, Ala. Code 1975, a provision of the SFA entitled “legislative intent,” states:
“The purpose of this chapter is to improve the quality of public education in the State of Alabama by doing all of the following:
[[Image here]]
“(2) Restoring primary authority and responsibility for maintaining a competent educational workforce to employers covered by this chapter.
[[Image here]]
“(5) Eliminating costly, cumbersome, and counterproductive legal challenges to routine personnel decisions by simplifying administrative adjudication and review of contested personnel decisions.”
Thus, the intent behind requiring the hearing officer to give deference to the Board’s decision is to both place the decision-making authority with the Board and to eliminate “counterproductive legal challenges.” § 16-24C-2(5), Ala.Code 1975.
In his decision affirming the Board’s decision to dismiss Lambert due to his violation of Board Policy Number 826, the hearing officer acknowledged that deference was to be afforded the decision of the Board. The undisputed facts revealed that Lambert had brought a loaded firearm onto the school’s campus and that, along with the loaded firearm, he had brought an additional clip of ammunition. Moreover, Little opined that as a superintendent his utmost priority, was the safety of students and personnel and that Lambert’s actions in bringing a loaded firearm onto the.school’s campus had created such a dangerous and unsafe environment that his dismissal was warranted under the facts of this case. Accordingly, we cannot conclude that the hearing officer afforded the Board’s decision to terminate Lambert’s employment too much deference; instead, we conclude that the hearing officer merely gave deference to the wishes of the Board based upon the record before him.
Lambert also argues that the hearing officer’s affirmance of the Board’s decision to terminate his employment is due to be reversed because, he says, the hearing officer “erred as a matter of law” in not recognizing that he could reverse the Board’s decision and remand the action to impose the lesser penalty of suspension. Essentially, he rests this second argument on the hearing officer’s judgment, which stated that “the Student’s First Act of 2011 provide[s] that the Hearing Officer may affirm or reverse the decision of the Board only, no modification is authorized.”
As noted above, § 16-24C-6(e) states, in pertinent part: “The hearing officer shall hold a hearing. Deference is given to the decision of the employer. A final ruling, either affirming or reversing the decision of the employer, shall be rendered within five days after the hearing.” Thus, the plain language of the statute allows the hearing officer to affirm or reverse the Board’s decision. Implicit in giving the hearing officer the authority to reverse a Board’s decision is the power to remand the action. However, regardless of the implicit authority to remand an action upon the reversal of a board’s decision, the requirement in § 16-24C-6(e) that the hearing officer give deference to *761 the board’s decision controls the resolution of this argument, because the standard of review and the ability to reverse and remand are inherently intertwined.
In this case, we have concluded that, based on the record, the hearing officer’s affirmance of the Board’s decision is due to be upheld because the hearing officer merely afforded deference to the Board’s decision as he was required to do. The fact that the, hearing officer may not have reached the same decision as the Board, the finder of fact, had he been a member of the Board is not reason for reversal, because to reverse for such a reason would be to substitute the hearing officer’s judgment for that of the Board when the statute requires him to give deference to the Board’s decision. See Cahalane, 117 So.3d 363, 371 (Ala.Civ.App.2012) (reversing a hearing officer’s reversal of the board’s suspension of an employee who had brought a substance she thought was, and was later confirmed to be, marijuana onto the board’s central office property in violation of the board’s zero-tolerance policy involving illegal drugs). Thus, we cannot conclude that the hearing officer erred in failing to reverse the Board’s decision and remand the action for it to impose the lesser penalty of suspension.

Conclusion

Therefore, we affirm the hearing officer’s decision to affirm the Board’s termination of Lambert’s employment based on his violation of Board Policy Number 826.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. "The events that form the basis of this appeal occurred after July 1, 2011, the effective date of the Students First Act ('the SFA’), § 16-24C-1 et seq., Ala.Code 1975, which, among other things, repealed and replaced the former Fair Dismissal Act ('the FDA’), see former § 36-26-100 et seq., Ala. Code 1975. See § 16-24C-14, Ala.Code 1975 (the effective date of the SFA is July 1, 2011).”
Chilton Cnty. Bd. of Educ. v. Cahalane, 117 So.3d 363, 363 (Ala.Civ.App.2012).

. Lambert’s permit was entered into evidence at the hearing.

. Section 11-80-11, Ala. Code 1975, was amended effective August 1, 2013. As part of *758 that amendment, subsection (a) was deleted from the statute. See Act No. 2013-283, Ala. Acts 2013.

. As noted earlier, the record contains Lambert’s permit to lawfully carry the firearm.