Wilbanks Health Care Services, Inc., d/b/a Sylacauga Health Care Center ("Wilbanks"), sought certiorari review of a judgment of the Court of Civil Appeals, which affirmed a judgment of the Montgomery Circuit Court, which, in turn, affirmed the decision of the Alabama Medicaid Agency ("the Agency") denying Wilbanks reimbursement for certain payments Wilbanks had made to American HealthTech, Inc. ("AHT"), related to Wilbanks's purchase and use of computer software. We reverse and remand.
 I. Procedural Background
In 2001, Wilbanks entered into a "purchase and license agreement" ("the agreement") with AHT, a company that develops software for the long-term health-care industry, for the purchase and license of computer hardware and software, respectively. The "license fees for AHT application software" included a set price of $266 per month for "software maintenance" ("the monthly fees"). Additionally, the agreement provided for additional hourly fees described as "on-site and telephone support" ("the hourly fees"). The agreement also provided, in pertinent part:
 "Implementation of the software is described on Schedule B and fees for this service are included in the Software License and Implementation Fees under Installed Product on Schedule A. . . .
 "Support fees after implementation will be charged at $83.00 per hour for application on-site and telephone support and $94.00 per hour for standard technical on-site and telephone support. Software maintenance fees will be . . . payable [monthly] in advance. Payment of the fee entitles the User to any updates to the programs covered under this Agreement and the first hour of support time each month. Unused support time for a particular month is not carried forward. The initial monthly payment will cover the maintenance period through the first full month after the system is installed. Software maintenance and support fees may be subject to state and local taxes.
 "The rates and fees shown in the previous two paragraphs reflect AHT's current rates. As the cost of providing such support and maintenance services *Page 424 
increases, AHT reserves the right to adjust these fees annually. AHT will endeavor to keep any such increases as reasonable as possible and will provide the User with written notice of any increase thirty (30) days in advance.
 "The software maintenance Fee is due for the length of time that the User uses the AHT software. The User's right to use this software and related materials shall cease upon failure to make payment of the software maintenance fee. Such failure to make payment of this fee will constitute a termination of this agreement . . . if AHT so elects."
(Emphasis added.)
From July 1, 2001, through June 30, 2002, Wilbanks paid AHT $2,885 in monthly fees. Wilbanks sought reimbursement of those fees as an operating expense from the Agency, which administers the Alabama Medicaid Program. See Ala. Admin. Code (Medicaid), r. 560-X-1-.03. The Agency denied reimbursement, taking the position that the monthly fees were more properly classified as a capital expenditure, indirectly reimbursable[1]
pursuant to the Medicaid "Fair Rental" provisions of Ala. Admin. Code (Medicaid), r. 560-X-22-.14, [2] rather than as an operating expense.
After its reimbursement request was denied, Wilbanks requested a fair-hearing appeal before the Agency. Following that proceeding, the hearing officer recommended the denial of reimbursement. The Medicaid commissioner adopted that recommendation and entered a final decision denying reimbursement. Wilbanks petitioned the Montgomery Circuit Court for review of the commissioner's decision. In a judgment entered on October 3, 2005, the circuit court remarked "that something is inherently unfair and not rational about this entire process." Nevertheless, it affirmed the commissioner's decision denying reimbursement. Wilbanks then appealed the circuit court's judgment to the Court of Civil Appeals. In a plurality opinion, with one judge dissenting and two judges concurring only in the result, the Court of Civil Appeals affirmed the judgment. Wilbanks Health Care Servs., Inc. v.Alabama Medicaid Agency, 986 So.2d 411 (Ala.Civ.App. 2006).
We granted Wilbanks's petition to consider its assertion that the decision of the Court of Civil Appeals is in conflict with prior decisions of that court prescribing the compliance of State agencies with their own rules and regulations, includingHand v. State Department of Human Resources,548 So.2d 171 (Ala.Civ.App. 1988), aff'd, 548 So.2d 176
(Ala. 1988), which stated:
 "Rules, regulations, and general orders of administrative authorities pursuant to powers delegated to them have the force and effect of laws when they are of statewide application and so promulgated that information of their nature and effect is readily available or has become part of common knowledge. State v. Friedkin, 244 Ala. 494, 14 So.2d 363 (1943). Moreover, where an agency *Page 425 
prescribes rules and regulations for the orderly accomplishment of its statutory duties, its officials must vigorously comply with those requirements; regulations are regarded as having the force of law and, therefore, become a part of the statutes authorizing them. American Federation of Government Employees v. Callaway, 398 F.Supp. 176
(N.D.Ala. 1975)."
548 So.2d at 173 (emphasis added). According to Wilbanks, the Agency failed to "vigorously comply" with standards for reimbursement set forth in its own regulations. We agree.
 II. Discussion
Judicial review of decisions of administrative bodies is governed by Ala. Code 1975, § 41-22-20(k). Such decisions may be reversed where the "agency action is . . . [i]n violation of any pertinent agency rule." § 41-22-20(k)(3). Review of the hearing officer's conclusions of law or application of law to the facts is de novo. MedicalLicensure Comm'n of Alabama v. Herrera, 918 So.2d 918, 926
(Ala.Civ.App. 2005); State Dep't of Human Res. v.Funk, 651 So.2d 12, 16 (Ala.Civ.App. 1994). We review the issue here presented de novo.
It is undisputed that "[t]he Agency does directly
reimburse nursing homes for the cost of maintaining
equipment, including computer software," pursuant to Ala. Admin. Code (Medicaid), r. 560-X-22-.10(3)(e).Wilbanks, 986 So.2d at 414 (emphasis added). However, the Agency insists that the monthly fees expended by Wilbanks are not for "true software maintenance," Agency's brief, at 7 (emphasis added), but "are in reality just part of the overall purchase price of the software product."Id. at 8.
To be sure, the undisputed evidence adduced before the hearing officer revealed that the monthly fees disallowed by the Agency are mandatory and payable monthly for as long as Wilbanks uses the software. They entitle Wilbanks to periodic — typically quarterly — software updates/upgrades, which "usually involved rewriting a line of code in the software to fix an application that was not working properly or to respond to a statutory or regulatory change." Wilbanks,986 So.2d at 415. The Court of Civil Appeals
 "conclude[d] that it was reasonable for the Agency to decide that a monthly maintenance fee that must be paid in advance to avoid termination of the contract, that is based on a percentage of the purchase price, and that encompasses a periodic upgrade/update service provided for all users is in the nature of a `user fee' or a `licensing fee' that should be considered part of the purchase price of the product and, therefore, is a capital expenditure rather than an operating expense."
986 So.2d at 418-19 (emphasis added). Although the Court of Civil Appeals correctly noted that the Agency's "regulations contain no definition of [the term] `maintenance,'"986 So.2d at 414, the problem, as we see it, is that the Agency does not have unfettered discretion to define that term.
"Nursing Facility Reimbursement" is provided for in Ala. Admin. Code (Medicaid), r. 560-X-22. More specifically, r.560-X-22-.02 provides, in pertinent part:
 "(2) The Alabama Medicaid Program is administered by Medicaid under the direction of the Governor's office. Reimbursement principles for nursing facilities are outlined in the following sections of this chapter. These principles, hereinafter referred to as `Medicaid Reimbursement Principles,' are a combination of generally accepted accounting principles, principles included in the State Plan, Medicare (Title XVIII) *Page 426 Principles of Reimbursement, and principles and procedures promulgated by Medicaid to provide reimbursement of provider costs which must be incurred by efficiently and economically operated nursing facilities. These principles are not intended to be all inclusive, and additions, deletions, and changes to them will be made by Medicaid on an annual basis, or as required. Providers are urged to familiarize themselves fully with the following information, as cost reports must be submitted to Medicaid in compliance with this regulation.
 "(3) If this regulation is silent on a given point, Medicaid will normally rely on Medicare (Title XVIII) Principles of Retrospective Reimbursement
and, in the event such Medicare Principles provide no guidance, Medicaid may impose other reasonability tests."
(Emphasis on "normally" original; all other emphasis added.)
Although the Agency's regulations do not define "software maintenance" or prescribe the manner of reimbursement for such maintenance costs, that subject is specificallytreated in Medicare (Title XVIII) Principles of Retrospective Reimbursement, 42 C.F.R. § 413.130(b)(7) (2006). That subsection provides:
 "Amounts included in lease or rental payments for repair or maintenance agreements are excluded from capital-related costs. If no amount is identified in the lease or rental agreement for maintenance, the entire lease payment is considered a capital-related cost subject to the provisions of paragraph (b)(1) of this section."
(Emphasis added.)[3] This subsection unambiguously provides that amounts paid for maintenance may be treated as a "capital-related cost" only if the parties to the leasefail to treat the subject of maintenance in their lease agreement. The parties in this case clearly didtreat the subject of software maintenance in the agreement.
The Agency argues that it is not bound by the terminology used by the parties in the agreement. This argument misses the point, however, because the Agency most certainly isbound by 42 C.F.R. § 413.130(b)(7), and byHand, which stands for the unremarkable proposition that State agencies are bound to comply with their own regulations.
Regulation 560-X-22-.02(3) requires the Agency to "rely," first, "on Medicare (Title XVIII) Principles of Retrospective Reimbursement." Only if those principles, which include42 C.F.R. § 413.130(b)(7), "provide no guidance" can the Agency resort to "other reasonability tests." Section 413.130(b)(7) provides clear guidance on the issue of reimbursement of costs for software maintenance. Thus, the Agency's inquiry should have ended with42 C.F.R. § 413.130(b)(7).
Instead, the Agency employed a narrow definition of maintenance to justify treatment of the monthly fees as "a capital-related cost." The Agency's definition of "true maintenance" depends largely on which party to the agreement initiates the service. "Vendor-generated updates" are regarded as "capital-related" costs, while vendee-generated requests for assistance are reimbursable as operating costs. Agency's brief, at 20-21. Thus, "an immediate fix to a problem," such as when Wilbanks seeks assistance with a "program *Page 427 
[that] is not working properly," even where a technician "come[s] out to the site and correct[s] . . . operating deficiencies in the program," falls within the Agency's definition of maintenance. Wilbanks, 986 So.2d at 415. However, costs associated with a technician's site visit to "correct . . . deficiencies" that prevent Wilbanks's compliance with current statutory or regulatory provisions arenot within the Agency's definition of maintenance. In contrast to its treatment of the monthly fees, the Agency generally treats the hourly fees as "true maintenance."
In the ordinary sense of the word, to "maintain" means to "keep in force; keep in good order;keep in proper condition; keep in repair;keep up; preserve; preserve from lapse, decline,failure, or cessation; provide for; rebuild; [or] repair."Black's Law Dictionary 953 (6th ed. 1990) (emphasis added). Similarly, the word "maintenance" means "[t]he upkeep or preservation of condition of property, including cost ofordinary repairs necessary and proper from time to time
for that purpose." Id. (emphasis added).
"[W]here an agency prescribes rules and regulations for the orderly accomplishment of its statutory duties, its officials must vigorously comply with those requirements. . . ."Hand, 548 So.2d at 173 (emphasis added). This principle prevents agencies from skirting their own regulations by the use of crabbed, ad hoc definitions of regulation terms. Likewise, "language used in an administrative regulation should be given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute."Alabama Medicaid Agency v. Beverly Enters.,521 So.2d 1329, 1332 (Ala.Civ.App. 1987). Under42 C.F.R. § 413.130(b)(7), maintenance, as used in its ordinary sense — software maintenance[4] — is what the agreement contemplated. In adopting a cramped definition of software maintenance, the Agency is doing something less than "vigorously comply[ing]" with its regulations.
 III. Conclusion
For the foregoing reasons, the decision of the Court of Civil Appeals is in conflict with Hand as to the duty of the Agency to comply with pertinent administrative regulations, particularly Regulation 560-X-22-.02(3) and42 C.F.R. § 413.130(b)(7). Consequently, the judgment of the Court of Civil Appeals is reversed, and the cause is remanded to that court for the entry of an appropriate order.
REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, STUART, and BOLIN, JJ., concur.
SMITH and PARKER, JJ., concur in the result.
MURDOCK, J., recuses himself.
[1] See Wilbanks Health Care Servs., Inc. v.Alabama Medicaid Agency, 986 So.2d 411, 413
(Ala.Civ.App. 2006).
[2] Regulation 560-X-22-.14(2) provides:
 "Effective September 1, 1991, a Fair Rental System will be used to reimburse property costs. The Fair Rental System reduces the wide disparity in the cost of capital payments for basically the same service and makes the cost of capital payment fairer to all participants in the program. The Fair Rental System is a rate of return on current asset values and will be used in lieu of depreciation and/or lease payments on land, buildings, and major movable equipment normally used in providing patient care."
[3] The Agency cites no comparable provision from its regulations or from any other source. Indeed, according to the Agency, whether the disputed costs are, in fact, maintenance costs is a "factual issue [that] cannot be found in [generally accepted accounting principles] or Medicare or Medicaid regulations." Agency's brief, at 14.
[4] There is no allegation that Wilbanks and AHT drafted the agreement so as to manipulate or thwart the applicable regulations. Cf. Wilbanks, 986 So.2d at 418 (parties should not be able, "by the wording of their agreements, completely [to] thwart the executive or legislative policy underlying administrative regulations").