THOMAS, Judge.
*200 This is the second appeal to this court from the decision of a hearing officer regarding the decision of the Escambia County Board of Education ("the Board") to terminate the employment of John Lambert pursuant to the Students First Act ("the SFA"), Ala. Code 1975, § 16-24C-1 et seq.See Lambert v. Escambia Cty. Bd. of Educ., 199 So.3d 751 (Ala.Civ.App.2013) (" Lambert I").
The facts and early procedural history were set out in our earlier opinion:
"The record indicates the following. On May 11, 2012, a custodian at the school found a firearm in a case located inside a bag that was on top of Lambert's desk in his office, which was located in the band room on the school's campus. Lambert was employed by the Board as the part-time band director at the school at that time. It was undisputed that the band room and Lambert's office had both been locked and that the custodian had unlocked the doors to those rooms with the key the school had issued to her. The custodian contacted school personnel regarding her discovery of the firearm, who, in turn, contacted Scott Hammond, the school's principal. Hammond entered Lambert's office; he looked inside the bag placed on Lambert's desk and saw a case containing a firearm containing a fully loaded ammunition clip and an additional fully loaded ammunition clip. Hammond looked through the other contents of the bag and noticed that, in addition to the firearm and the two ammunition clips, it contained Lambert's checkbook and other personal effects. Lambert was not on campus on May 11, 2012, because he was with a group of band students on an overnight band trip to Atlanta; Lambert and the band students were set to arrive back on the school's campus late on May 12, 2012. Hammond placed the case containing the firearm and ammunition clips inside the pocket of his pants and traveled to his office, where he proceeded to lock the door and to telephone Randall Little, the interim superintendent of the Board at that time.
"Hammond testified that Little told him to bring the firearm and ammunition clips to the Board's central office, which he did. Hammond further testified that Little also requested that Hammond be present on May 12, 2012, to meet the buses returning from the overnight band trip so that he could speak with Lambert regarding the discovery of the firearm and ammunition clips in his office. Hammond testified that on May 12, 2012, he spoke with Lambert regarding the discovery of the firearm and ammunition clips, that Lambert confirmed that the firearm and ammunition clips were his, and that they set up a meeting to discuss the incident for May 14, 2012.
"On May 14, 2012, Lambert met with Hammond at the school's campus to discuss the discovery of his firearm on campus and the potential consequences. At this meeting, Lambert again confirmed that the discovered firearm and ammunition clips were his and that he had inadvertently left them inside his bag inside the locked office, inside the locked band room. He explained that he had forgotten that the firearm and ammunition clips were inside the bag when he brought the bag on the school's campus. Hammond informed Lambert that Board Policy Number 826 entitled 'Board Employees and Weapons' states: 'No employee, with the exception of any law enforcement personnel, will be in *201 possession of an unauthorized weapon on any school premises, including school vehicles, or at any school-planned activity. Violation of this policy will result in suspension or dismissal of the employee.' He further gave Lambert a copy of Board Policy Number 826 and informed him that his options were to resign or to potentially be suspended or terminated from his employment due to his violation of Board Policy Number 826. Lambert testified that, although he knew that the school was a weapon-free campus, he was unaware of Board Policy Number 826 before May 14, 2012.
"Following his meeting with Hammond, Lambert hand-delivered his resignation on May 14, 2012. However, on May 15, 2012, Lambert rescinded his resignation. Subsequently, Little placed Lambert on administrative leave and mailed him a letter dated May 18, 2012, informing him that he had been placed on administrative leave. On June 1, 2012, Little sent Lambert a letter informing him that his recommendation to the Board was to terminate Lambert's employment and that Lambert had the right to ask for a hearing. See § 16-24C-6(b), Ala. Code 1975. Lambert requested a public hearing before the Board in a letter dated June 11, 2012. On July 23, 2012, the parties conducted a hearing before the Board. At the start of the hearing, the Board summarily denied Lambert's four motions to dismiss and his motion to suppress."
Lambert I, 199 So.3d at 754.
At the hearing before the Board, Lambert presented testimony of several witnesses who indicated that he was of good character and who stated that they would prefer not to see Lambert lose his position as a part-time band director as a result of his inadvertent violation of Board Policy Number 826. Lambert I, 199 So.3d at ----. In addition, Randall Little, the interim superintendent of the Board at that time, testified at the hearing that " 'one of the utmost responsibilities of the Escambia County Board of Education ... is to make sure that our campuses are safe and secure for our students and, of course, our personnel.' " Id. at 754. Little further explained that he had "decided to make a recommendation for termination instead of suspension for these reasons":
" 'The first reason is that we do not hold all of our students-which unfortunately this board, over the years that I have been employed by this district, has had to make very difficult decisions. We have held our students to be accountable and responsible to our campuses when it comes to weapons. We do have-it is promulgated. All of our campuses and school functions, et cetera, are weapons free, and our students are held accountable.
" 'Our employees are also-should be held accountable as well, particularly when they bring a loaded weapon on campus. This weapon, when found, was fully loaded. Not only was it fully loaded, it had a second clip that was fully loaded, and it was brought on school campus by ... Lambert and left on school campus by ... Lambert. This created unfortunately a very unsafe environment. Fortunately, in our case, no harm came, but it did create the environment to put people in harm's way on our campus. And, of course, thank goodness that nothing did come in harm's way, but if it had it would definitely be unfortunate-we'd be having a different hearing today.
" 'And also, as superintendent of education, I am bound by the law, by Administrative Code to take full action and full responsibility for said actions. And I cannot turn and sweep this under the *202 carpet. I must take serious action, even though how unfortunate it may be.' "
Id. at 755.
Lambert timely sought review of the Board's decision by a hearing officer as provided in Ala. Code 1975, § 16-24C-6(e). Id. The hearing officer affirmed the decision of the Board, albeit after stating that " 'it is the opinion of this Hearing Office[r] that a lesser penalty than termination should have been imposed. However, the Students First Act of 2011 provide[s] that the Hearing Officer may affirm or reverse the decision of the Board only, no modification is authorized.' " Lambert I, 199 So.3d at 756. Lambert appealed the hearing officer's decision to this court, which affirmed the hearing officer's decision to affirm the decision of the Board, after concluding that the hearing officer had been required to apply the arbitrary-and-capricious standard of review to the decision of the Board and had satisfied that requirement by affording "deference" to the Board's decision. Id. at ----.
Lambert sought certiorari review of this court's decision, and the supreme court, in a plurality decision, reversed this court's decision and ordered this court to remand the matter to the hearing officer so that he could apply the arbitrary-and-capricious standard of review to the Board's decision. Ex parte Lambert, 199 So.3d 761, ---- (Ala.2015). Although a majority of the supreme court agreed that the arbitrary-and-capricious standard was the appropriate standard for the hearing officer to apply to his review of the Board's decision,[1] three members of the court opined that the remand to the hearing officer was unnecessary because, as a matter of law, the Board's decision could not be considered arbitrary and capricious. Ex parte Lambert, 199 So.3d at 769-70 (Shaw, J., concurring in part and dissenting in part, joined by Stuart and Bolin, JJ.).
As instructed, this court remanded the matter to the hearing officer. Lambert v. Escambia Cty. Bd. of Educ., 199 So.3d 772 (Ala.Civ.App.2016) (" Lambert II"). On March 11, 2016, the hearing officer entered the following order on remand:
"This matter has been remanded to the Hearing Officer by the Alabama Supreme Court through the Alabama Court of Civil Appeals to ' "review the sanction imposed against [John] Lambert under the arbitrary-and-capricious standard of review as that standard of review is articulated in" Ex Parte Lambert, 199 So.3d 761 (Ala.2016).' [ Lambert II, 199 So.3d at 772.]
"The pertinent facts are set out in the Supreme Court's opinion referenced above. Simply put, Lambert was a tenured teacher-band director at Flomaton High School. On the morning of May 11, 2012, Lambert and the band were to depart for a band contest in Atlanta. Before getting on the bus, Lambert put a small bag containing personal items on a desk in his office. Lambert testified that he forgot his loaded .380 automatic pistol was in the bottom of the bag. Lambert's office and the band room were locked. Lambert had a permit for the pistol.
*203 "During Lambert's absence, the school custodian 'discovered' (how did this happen?) the gun and reported it to the principal.
"The School Board had adopted Policy No. 826, which provides: 'No employee, with the exception of any law enforcement personnel, will be in possession of an unauthorized weapon on any school premises, including school vehicles, or at any school planned activity. Violation of this policy provision will result in the suspension or dismissal of the employee.'
"The School Board Superintendent informed Lambert that he was going to recommend to the School Board that Lambert's employment be terminated.
"Lambert requested a hearing before the Board, which was held on July 23, 2012. The Board terminated Lambert's employment by a vote of six to one. The Board found that Lambert violated Policy No. 826, but neither referenced Lambert's excellent character and prior employment history nor explained its decision to terminate rather than suspend.
"As provided by the [SFA] (section 16-24C-l et seq.), Lambert appealed the Board's decision to this Hearing Officer. This Hearing Officer affirmed the Board's decision, opining that he (the Hearing Officer) felt that a lesser penalty should have been imposed, but that the [SFA] provided only that the Hearing Officer affirm or reverse the Board's decision only; no modification was authorized.
"Lambert appealed that ruling to the Alabama Court of Civil Appeals and that Court affirmed. Lambert then filed for certiorari with the Alabama Supreme Court which was granted.
"The Supreme Court ruled that the School Board is the finder of fact under the SFA and the Hearing Officer functions as an appellate tribunal subject to further appellate review by the Court of Civil Appeals.
"The Supreme Court further held that the deference a reviewing body must afford the decision of the fact-finder is the equivalent of the arbitrary-and-capricious standard which is 'extremely' deferential. Further 'where reasonable people could differ as to the wisdom of the [fact-finder's] decision, the decision is not arbitrary.' [ Ex parte Lambert, 199 So.3d at 767.] Also, 'if the decision-maker has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made, its decision is not arbitrary.' [ Ex parte Lambert, 199 So.3d at 767.]
"Going further the Supreme Court said when a Hearing Officer chooses a penalty option other than the termination voted for by a Board of Education, the Hearing officer has reversed the decision of the Board.
"The Court further held 'under the arbitrary-and-capricious standard of review, if a Hearing Officer determines that the sanction imposed by an employer is arbitrary and capricious, the Hearing Officer may remand the matter with instructions to the employer to impose a lesser penalty.' [ Ex parte Lambert, 199 So.3d at 769.]
"Webster's Collegiate Dictionary defines 'caprice' as a 'sudden, compulsive and seemingly unmotivated notion or action' and 'arbitrary' is 'not restrained or limited in the exercise of power.'
"To determine whether the Board's decision to terminate Lambert's employment was arbitrary and capricious, this Hearing Officer must examine the following:
*204 "1) The rule or policy of the Board violated.
"2) The purpose of the rule or policy.
"3) The act or omission of the employee.
"4) The culpability of the employee.
"5) The injury or damage caused.
"6) The history, character and reputation of the employee.
"7) The penalty authorized and the penalty imposed.
"1) The Board's Policy No. 826 cited above prohibits any employee from possessing an unauthorized weapon on school premises. Certainly Lambert's loaded .380 Kel-Tec automatic pistol is an unauthorized weapon. See section 13A-1-2(6), Code of Alabama. The violation of the policy was not disputed.
"2) The purpose of the policy, obviously, is to protect the school students and employees and prevent injury or damage to them.
"3) The act or omission was the bringing onto school premises the unauthorized weapon by Lambert.
"4) The culpability of Lambert should be closely examined and should have been closely examined by the Board.
"Lambert testified that he forgot the pistol was in his bag. No evidence was produced to the contrary. Thus, there was no intent to violate the policy.
"Lambert had a permit for the pistol.
"The pistol was in a zippered bag inside another zippered bag.
"The pistol could not be seen from the outside.
"Although the pistol was loaded, there was no round in the chamber.
"The bag was in Lambert's locked office inside the locked band room. Only Lambert, the principal and the custodian had keys.
"5) No injury or damage resulted from the violation.
"6) Lambert served 27 years in the U.S. Army. During the course of his army and teaching career, he was never charged with neglect of duty, insubordination or failure to perform duties in a satisfactory manner. He was never disciplined before this incident and many witnesses testified to his excellent character and reputation.
"7) The penalty prescribed by this policy was suspension or termination. However, the maximum penalty for a student for bringing a weapon onto school campus is expulsion for one calendar year.
"The Board did not explain its reasoning in its decision to impose termination rather than suspension."
Based on the above and his consideration of the testimony and documentary evidence presented to the Board, the hearing officer concluded:
"It is apparent that the Board did not consider, or insufficiently considered, the following in making its decision to terminate rather than suspend:
"A. No intent by Lambert to violate the policy.
"B. Minimal danger to students and employees. The pistol was in a zippered bag inside another zippered bag inside Lambert's locked office inside a locked band room with only Lambert, the principal and the custodian having keys. Band members were away from the school premises.
"C. No injury or damage resulted from the violation.
"D. Lambert's excellent work history, character and reputation.
*205 "E. The maximum penalty a student could receive for the same violation being a one year expulsion.
"THE RULING of this Hearing Officer is that the Board's penalty of termination was and is arbitrary and capricious as that standard was articulated by the Supreme Court.
"THEREFORE the Board's decision to terminate Lambert's employment is reversed, and this matter is remanded to the Board to impose a penalty of suspension not exceeding one year; such suspension to run from Lambert's original date of termination."
The Board timely appealed from the hearing officer's decision. In its appellate brief, the Board argues that the hearing officer erred in concluding that the Board acted arbitrarily and capriciously in terminating Lambert's employment and that the hearing officer acted outside his authority under the SFA in remanding the matter with the instruction that the Board impose a suspension of one year or less on Lambert. More specifically, the Board challenges the hearing officer's understanding and application of the arbitrary-and-capricious standard in light of what it construes as the hearing officer's substitution of his judgment for that of the Board regarding the appropriate penalty for the admitted violation of Board Policy Number 826. The Alabama Association of School Boards, appearing as amicus curiae in support of the Board, argues that the hearing officer has misapplied the arbitrary-and-capricious standard and that the hearing officer "put aside [the deference due the Board's decision] in favor of an analytical framework of his own choosing."
In response, Lambert argues that the hearing officer complied fully with the remand instructions set out by our supreme court in Ex parte Lambert. He points out that the plurality opinion indicated that a hearing officer is entitled to reverse a school board's decision and to remand for imposition of a lesser penalty. See Ex parte Lambert, 199 So.3d at 769 ("[I]f a hearing officer determines that the sanction imposed by an employer is arbitrary and capricious, the hearing officer may remand the matter with instructions to the employer to impose a lesser penalty."). Thus, Lambert posits, the hearing officer is entitled to judge whether the penalty imposed is arbitrary and capricious, which, according to Lambert, allows the hearing officer to determine if the penalty is too harsh for the infraction committed. Furthermore, Lambert argues, the Board failed to articulate a reason for choosing to impose termination as a sanction as opposed to the lesser permitted punishment of suspension, thus supporting the conclusion that the Board's imposition of termination of Lambert's employment as a penalty was, in fact, arbitrary and capricious under the facts.
The appropriate appellate standard of review was set out in Ex parte Lambert, 199 So.3d at 765 :
" '[I]t is well established that where the issues involve only the application of law to undisputed facts appellate review is de novo. See, e.g., State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 810 (Ala.2005). This has been held to be true where a hearing officer's decision is otherwise subject to more limited review. Ex parte Wilbanks Health Care Servs., 986 So.2d 422, 425 (Ala.2007) ("Review of the hearing officer's conclusions of law or application of the law to the facts is de novo."); Barngrover v. Medical Licensure Comm'n of Alabama, 852 So.2d 147, 152 (Ala.Civ.App.2002) ("The presumption of correctness does not attach to the hearing officer's conclusions of law; further, no presumption *206 of correctness exists when a hearing officer improperly applied the law to the facts.").'
" Ex parte Soleyn, 33 So.3d 584, 587 (Ala.2009). See also Huntsville City Bd. of Educ. v. Stranahan, 130 So.3d 204, 206 (Ala.Civ.App.2013) ('We note that the facts pertaining to this issue are undisputed, and, therefore, the argument involves whether the hearing officers properly applied the law to the undisputed facts. Accordingly, this court reviews this issue de novo.'). We are not required to resolve any factual disputes in order to answer the questions of law presented in this case. Our review is therefore de novo."
The plurality decision in Ex parte Lambert explained that
"the arbitrary-and-capricious standard of review applicable to appellate courts reviewing decisions under the [former Teacher Tenure Act, Ala. Code 1975, § 16-24-1 et seq. (repealed),] and the [former Fair Dismissal Act, Ala. Code 1975, § 36-26-100 et seq. (repealed),] now applies to hearing officers' review of employers' decisions under the SFA. The SFA provides that '[a] final ruling, either affirming or reversing the employer, shall be rendered' by the hearing officer. § 16-24C-6(e). 'When a hearing officer chooses [a penalty] option other than the cancellation voted for by a board of education, the hearing officer has "reversed the decision" of the board.' Ex parte Wilson, 984 So.2d 1161, 1166 ([Ala.]2007). The Court of Civil Appeals correctly recognized in its decision below that '[i]mplicit in giving the hearing officer the authority to reverse a Board's decision is the power to remand the action.' Lambert, 199 So.3d at 768-69. "Under the arbitrary-and-capricious standard of review, if a hearing officer determines that the sanction imposed by an employer is arbitrary and capricious, the hearing officer may remand the matter with instructions to the employer to impose a lesser penalty."
199 So.3d at 769. Our supreme court instructed this court to reverse the hearing officer's decision and to remand the matter to the hearing officer "with instructions [that the hearing officer] review the sanction imposed against Lambert under the arbitrary-and-capricious standard of review as that standard is articulated in this opinion." Id. at 769. The Board and Lambert have differing opinions of the definition of the arbitrary-and-capricious standard articulated in Ex parte Lambert.
To be certain, the plurality opinion recognized repeatedly that, historically, the arbitrary-and-capricious standard has been treated as being "extremely deferential" to the decision of the fact-finding body, which, under the SFA, is the Board. Id. Furthermore, the plurality opinion noted that, " '[p]ursuant to the arbitrary-and-capricious standard of review, [the reviewing body] may "disagree with the wisdom of the decision[ ] [but] ... may not substitute [its] judgment for that of the [fact-finder]." ' " Ex parte Lambert, 199 So.3d at 767 (quoting Bishop State Cmty. Coll. v. Thomas, 13 So.3d 978, 986 (Ala.Civ.App.2008), quoting in turn Ex parte Dunn, 962 So.2d 814, 823-24 (Ala.2007) ). In addition, we note that the plurality opinion quoted with approval this court's reasoning for applying the arbitrary-and-capricious standard to an appeal from a hearing officer under the SFA in a case involving the termination of a teacher's employment by the Huntsville City Board of Education:
" '[T]he legislature has specifically stated that it intended for the SFA to "[r]estor[e] primary authority and responsibility for maintaining a competent educational workforce" to school boards, § 16-24C-2(2), [Ala. Code 1975,] and *207 further stated that its objective was to "[e]liminat[e] costly, cumbersome, and counterproductive legal challenges to routine personnel decisions by simplifying administrative adjudication and review of contested personnel decisions." § 16-24C-2(5)[, Ala. Code 1975 ]. Because we have applied the arbitrary and capricious standard to teacher-termination appeals arising under the SFA based on its historical application in the fact-finder's decisions in teacher-termination cases, see [ Chilton Cty. Bd. of Educ. v.] Cahalane, 117 So.3d [363,] 366 [ (Ala.Civ.App.2012) ] (collecting cases), and because of what we perceive to be the legislature's intent that personnel decisions of school boards be given deference to support the legislature's stated objective in the SFA of placing control over maintaining a competent teaching force with those boards, we reject [the teacher's] contention that the declaration in the SFA that the decision of a school board be given deference indicates that the legislature desired that a less deferential standard of review than "arbitrary and capricious" govern a hearing officer's review of an appeal from a school board's decision.' "
Ex parte Lambert, 199 So.3d at 768 (quoting Huntsville City Bd. of Educ. v. Jacobs, 194 So.3d 929, 939 (Ala.Civ.App.2014) ).
However, the plurality opinion in Ex parte Lambert also contains this explanation of the term "arbitrary": " ' "If the decision-maker has ' "examined the relevant data and articulated a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made,' " ' its decision is not arbitrary." ' " Id. at 767 (quoting Ex parte Dunn, 962 So.2d at 816-17 ). As noted in Ex parte Lambert, Ex parte Dunn was construing the former Teacher Tenure Act ("the TTA"), Ala. Code 1975, § 16-24-1 et seq. (repealed), which required the hearing officer considering an employment decision of a school system to "render a written decision, with findings of fact and conclusions of law ....," see Ala. Code 1975, former § 16-24-10(a), which was then reviewed under the arbitrary-and-capricious standard by this court. Ex parte Dunn, 962 So.2d at 816 (quoting Ala. Code 1975, former § 16-24-10(b), and explaining that " '[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious....' "). The SFA does not impose a similar requirement of providing a detailed written decision on the Board but, instead, requires only that the Board "give written notice to the employee of the decision regarding the proposed termination." Ala. Code 1975, § 16-24C-6(d). Our supreme court has clearly indicated disfavor with an attempt to engraft upon a statute the requirement of providing a written finding. See, e.g., Ex parte Fann, 810 So.2d 631, 633-36 (Ala.2001) (rejecting this court's engrafting of a requirement of providing a written finding regarding whether domestic or family abuse occurred onto Ala. Code 1975, § 30-3-130 et seq. ); Ex parte Byars, 794 So.2d 345, 349 (Ala.2001) (concluding that a trial court is not required to state its reasons for awarding or rejecting joint custody and stating that "[w]e must conclude that if the Legislature had intended to require the trial court to state its reasons ..., it would have done so"). Thus, we cannot conclude that the inclusion of the explanation of the term "arbitrary" from Ex parte Dunn in any way engrafts onto the SFA a requirement that the Board "articulate a satisfactory explanation" for its decision to discharge *208 an employee.[2] Accordingly, we cannot agree with Lambert that the Board's failure to articulate its reason for choosing to terminate his employment as opposed to merely suspending him is, itself, a sufficient basis for the hearing officer's conclusion that the Board's decision was arbitrary and capricious.
We now turn to the hearing officer's conclusion that the Board "did not consider, or insufficiently considered," certain facts in making its decision to terminate Lambert's employment. Lambert argues that the hearing officer is entitled to consider the various facts and circumstances and to consider whether the Board adequately considered those facts and circumstances when deciding what penalty to impose for Lambert's violation of Board policy. Lambert insists that the Board's policy, which permits a sanction of termination or suspension, must be understood as allowing for a varying degree of punishment along that spectrum based on the seriousness of the offense and the employee's employment record. Although that might be true, Lambert has not explained to our satisfaction how the hearing officer, who serves as a layer of appellate review, as opposed to the Board, which is the fact-finder, is given the discretion to adjust the penalty as circumstances warrant.
The hearing officer states in support of his order reversing the Board's decision that the Board either failed to consider or "insufficiently considered" facts like the unintentional nature of the violation, the lack of any actual harm to any student, Lambert's otherwise exemplary record, and the corresponding student policy and the punishment for its violation. Those facts were sufficiently argued to the Board. Willie Grissett, the president of the Board, stated the following on the record before the Board entered executive session to discuss and consider the appropriate penalty for Lambert's violation of Board Policy Number 826:
"This concludes the hearing, and the Board will now convene into executive session to consider what action, if any, should be taken, and enter such order as it deems lawful and appropriate. If the Board feels that any or all of the reasons given by the superintendent for the proposed termination are supported by the evidence presented and that these reasons are sufficient, it may act accordingly. If the Board feels that termination is not appropriate under the facts presented, it may order a lesser punishment or no punishment at all."
The record therefore reflects that the Board did consider all arguments presented to it and that, as it began its deliberations, it was aware that it could choose whatever punishment it deemed appropriate. In addition, Grissett clearly stated that the Board could consider the reasons for termination advanced by the superintendent, which are quoted earlier in this opinion. Thus, we cannot agree that the record reflects that the Board failed to consider any factor the hearing officer found to be appropriate.
*209 The hearing officer's belief that his finding that the Board had "insufficiently considered" the facts and circumstances he found to be relevant could serve as a basis for a determination that the Board's decision was arbitrary and capricious, and that the Board's decision should therefore be reversed, runs counter to the principle that even if a hearing officer "disagree[s] with the wisdom of the decision, [he] may not substitute [his] judgment for that of the [Board]." Ex parte Dunn, 962 So.2d at 823-24. The appellate courts of this state have long explained that "where 'reasonable people could differ as to the wisdom of [the Board's] decision[,] ... the decision is not arbitrary.' " Ex parte Dunn, 962 So.2d at 816 (quoting Board of Sch. Comm'rs of Mobile Cty. v. Dunn, 962 So.2d 805, 809 (Ala.Civ.App.2006) ). These principles undergird the extremely deferential review permitted under the arbitrary-and-capricious standard.
Little, the interim superintendent, explained his reasons for recommending termination of Lambert's employment: the extreme danger posed by a loaded firearm and the need to hold any violator-student or employee-accountable under the applicable zero-tolerance weapons policy. As Justice Shaw noted in his special writing in Ex parte Lambert, the mere fact that the presence of a loaded gun on campus created a dangerous condition could have negated in the minds of the Board members the very facts and circumstances that the hearing officer determined should have been given more weight. As we have held before, the SFA requires deference to the personnel decisions of school boards in order to support the legislature's stated objective of placing control over maintaining a competent teaching force with those boards. See Jacobs, 194 So.3d at 939. To allow the hearing officer to determine that the Board did not give sufficient weight to facts and circumstances that, in the hearing officer's opinion, are more weighty than other facts and circumstances involved in the consideration of the appropriate sanction to be imposed by a school board for the violation of its policies undermines the purpose and intent of the SFA and upends the traditional notions regarding the application of the arbitrary-and-capricious standard. Permitting the hearing officer's conclusion that certain facts and circumstances should be given more weight than the fact of the violation itself to supplant the Board's decision to impose termination of employment for the violation of Board Policy Number 826 allows the hearing officer to substitute his judgment for that of the Board based on the hearing officer's disagreement with the wisdom of the Board's decision. Thus, we cannot agree that the hearing officer's decision is properly supported by his determination that the Board did not give sufficient consideration to what the hearing officer has determined are mitigating facts and circumstances supporting a lesser penalty.
Our supreme court mandated that the hearing officer apply the traditional arbitrary-and-capricious standard to the decision of the Board. Ex parte Lambert, 199 So.3d at 768 ("The SFA explicitly directs us to apply 'meanings traditionally accorded the terms and phrases by the appellate courts of this state under prior law,' [Ala. Code 1975,] § 16-24C-6(n), in determining the applicable standard of review."). The arbitrary-and-capricious standard is " ' "extremely deferential," ' " prohibiting the reviewing hearing officer from substituting his judgment for that of the Board. Id. at 767 (quoting Ex parte Dunn, 962 So.2d at 816 (emphasis omitted)). Put another way, " '[w]here "reasonable people could differ as to the wisdom of [the Board's] decision[,] ... the decision is not arbitrary." ' " Id. (quoting *210 Ex parte Dunn, 962 So.2d at 816 ). Traditional definitions of the terms "arbitrary" and "capricious" indicate that few decisions will be found to violate the standard.
" 'A decision is not arbitrary where there is a reasonable justification for the decision or where the determination is founded upon adequate principles or fixed standards.' Sexton v. Tuscaloosa County Civil Serv. Bd., 426 So.2d 432, 435 (Ala.Civ.App.1983). ' " ' "[A] decision is capricious if it is so unreasonable as to 'shock the sense of justice and indicate lack of fair and careful consideration.' " ' " ' Alabama Dep't of Human Res. v. Dye, 921 So.2d 421, 427 (Ala.Civ.App.2005) (quoting Westring v. James, 71 Wis.2d 462, 476-77, 238 N.W.2d 695, 702-03 (1976), quoting in turn Scharping v. Johnson, 32 Wis.2d 383, 390, 145 N.W.2d 691, 695 (1966) )."
Alabama Dep't of Youth Servs. v. State Pers. Bd., 7 So.3d 380, 386 (Ala.Civ.App.2008).
We agree with the Board that the hearing officer failed to properly apply the extremely deferential arbitrary-and-capricious standard of review to the Board's decision. Instead, the hearing officer determined that the Board had not provided reasons for its decision and that it therefore must have failed to consider, or insufficiently considered, certain facts and circumstances the hearing officer found to weigh in favor of suspension as opposed to termination of Lambert's employment. The Board, not the hearing officer, is the entity charged with making factual determinations and with determining the appropriate penalty for violations of its own policies. The hearing officer may reverse the decision of the Board and remand the matter for the entry of a lesser punishment only if the Board's decision is arbitrary or capricious. Ex parte Lambert, 199 So.3d at ----. The hearing officer's stated bases for his conclusion that the Board's decision was arbitrary and capricious do not support that conclusion, and we therefore reverse the decision of the hearing officer and remand this cause for the entry of an order upholding the Board's decision.[3]
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

Two members of the court opined that the appropriate standard to be applied to the review of the Board's decision was a standard "similar to the 'clearly erroneous' standard of review." Ex parte Lambert, 199 So.3d at 771 (Bryan, J., concurring in part and dissenting in part, joined by Wise, J.). Those justices concurred to reverse the hearing officer's decision and to remand of the cause to the hearing officer, but they would have instructed the hearing officer to apply what they believe is the appropriate standard of review.

Our conclusion appears to be bolstered by Justice Shaw's special writing, which was joined by Justices Stuart and Bolin, in which Justice Shaw considered the conclusions the Board could have drawn in making its decision and noted that he could "see no lack of a 'rational connection' between the offense in this case and the Board's choice." Ex parte Lambert, 199 So.3d at 770 (Shaw, J., concurring in part and dissenting in part). Thus, to the extent that Ex parte Lambert might be read to impose a requirement that the Board provide a written explanation of its decision to discharge an employee, only four justices appear to have joined in any such implied holding.

Because we have resolved the appeal in favor of the Board, we pretermit consideration of the other issues raised in its appellate brief.