THOMPSON, Presiding Judge.
Lawson State Community College ("Lawson State") appeals from a decision of the hearing officer appointed pursuant to the Students First Act of 2011 ("the SFA"), § 16-24C-1 et seq., Ala. Code 1975. The hearing officer's decision overturned the termination of Helen D. Mitchell's employment at Lawson State on the ground that the termination was arbitrary and capricious.
The record before us indicates the following. Mitchell was an administrative assistant in Lawson State's athletic department, having been hired for that position in August 2004. There is no dispute that, until the actions made the basis of this matter, Mitchell had performed her job well. At the time of the incidents that led to the termination of Mitchell's employment, Carlton Rice, Lawson State's athletic director, was her immediate supervisor. Sharon Crews was Lawson State's vice president for administrative services and served as its senior personnel officer. Dr. Perry W. Ward was the president of Lawson State, and he served as the hearing officer during Mitchell's termination hearing.
According to Mitchell's job description, a copy of which was admitted at the termination hearing, one of her duties was to "coordinate with Bob McCloskey Insurance for payments and claims for athletes." Bob McCloskey Insurance is the broker that procured the insurance policy ("the policy") used by the Alabama Community College Conference, which includes Lawson State, for their student athletes. At the termination hearing, Crews testified that Lawson State paid the premiums for coverage of its student athletes. The cost of the premiums was determined by the number of players on each of Lawson State's athletic teams. Crews said that the student whose claim was at issue ("the *890 student") was included in that number when the premium was paid for the policy. Crews testified that the student was a covered person under the policy. The policy itself does not contain any language that would suggest that the student was ineligible for coverage under the policy.
In her role as insurance coordinator, Mitchell was to assist in processing insurance claims for student athletes who were injured. Evidence in the record, which is largely undisputed, indicates that Mitchell received an insurance claim ("the claim") from the student, who was attending Lawson State on an athletic scholarship. At all times relevant to this matter, the student was enrolled at Lawson State as a student athlete. Crews testified that Rice informed her that Mitchell had not filed the claim, and Crews told him to tell Mitchell to please file it. On November 15, 2016, Rice sent an e-mail to Mitchell telling her that it was "okay" for her to file the claim. Mitchell replied to Rice, and sent a copy of her reply to Crews, saying that it was not "okay" for her to file the claim because, Mitchell said, to do so would constitute fraud. During her testimony, Mitchell explained her position that, if a student had not had a physical examination, that student was not an "eligible player" and would not be covered under the policy. She said that her records indicated that the student had not yet had a physical examination and that, therefore, she had refused to submit the student's claim form.[1] Mitchell acknowledged that she had not seen a copy of the policy.
In response to Mitchell's contention, Crews sent an e-mail to Mitchell telling her that if Mitchell did not want to file the claim, she did not have to, but to send the student's claim form to Crews or to Rice and Crews would file the claim. Crews testified that, the next day, after receiving Crews's e-mail, Mitchell told her that she "did not have anything to provide, and she could not assist us with that issue."
On November 17, 2016, Crews said, she met with Mitchell and Rice. At that meeting, Crews said, she asked Mitchell where the student's claim form was. Mitchell responded that she did not have the form. According to Crews, Mitchell said that the form "was trash, so she threw it away." Crews testified that the claim form was a record that belonged to Lawson State. Mitchell testified that documents containing confidential information regarding students were destroyed regularly.
Crews said that, when she asked Mitchell whether Rice had told her to file a claim for every student who submitted a claim form, Mitchell told her that Rice did not tell her what to do. Crews said that she then asked Mitchell whether the process was to "automatically" file a claim when a claim form is submitted and whether Rice had told her to follow that process on a regular basis. Crews testified that Mitchell said: "[N]o, Mr. Rice does not tell me anything to do because he doesn't know anything to tell me." Mitchell denied that she made that statement.
Crews said that, during the November 17, 2016, meeting, Mitchell was "defensive" and "arrogant" and "just blatantly disrespectful toward her supervisor." Crews said that Lawson State could not condone behavior such as the behavior that Mitchell had displayed because, she said, "[i]t would just create total chaos." Lawson State's disciplinary guidelines, of which Mitchell was aware, provide that disciplinary measures are to be determined on a case-by-case basis. The guidelines allow an employee's *891 employment to be terminated for a first offense, if warranted.
Because of Mitchell's behavior, Crews said, she recommended that Mitchell's employment be terminated. On December 14, 2016, Crews provided Mitchell with written notice that she was recommending the termination of Mitchell's employment on the grounds of insubordination, failure to perform her duties in a satisfactory manner, and/or other good and just cause in connection with her refusal to file the student's claim.
After the hearing, Ward issued a written decision setting forth his findings of fact and determining that "Ms. Mitchell had no objectively valid justification for refusing to process [the student's] insurance form or for not providing the same to Mr. Rice or Ms. Crews. Moreover, she had no objectively valid justification for destroying a record of [Lawson State]." Ward further determined that there was no credible evidence to suggest that the proposed termination of Mitchell's employment was based on political or personal reasons. Ward then concluded, based on the evidence presented, "as well as the demeanor and credibility of the witnesses," including a determination that Crews's testimony regarding Mitchell's comments to Rice was "far more credible" than Mitchell's testimony, that Mitchell's conduct constituted "insubordination, failure to perform duties in a satisfactory manner, and/or other good and just cause." He then adopted the recommendation to terminate Mitchell's employment with Lawson State.
Mitchell appealed the decision in accordance with the requirements of the SFA. Lawson State submitted the record of the termination hearing to the hearing officer designated to consider the appeal ("the hearing officer"). Mitchell attempted to submit additional documents to the hearing officer, who granted Lawson State's motion to strike those documents. The decision of the hearing officer on appeal was based solely on the record created before Ward. The hearing officer did allow arguments by the parties.
After the arguments, the hearing officer issued a decision on appeal in which he accepted Ward's factual findings. However, the hearing officer wrote, "the sanction imposed on ... Mitchell for the misconduct shown was extremely harsh and severe and not rationally related to her actions." The hearing officer noted that Mitchell had served as the administrative assistant to the athletic director for nine years and that she had received excellent job reviews. The hearing officer stated:
"[Lawson State] has terminated an excellent long term employee based upon her refusal to submit a claim she believed was fraudulent, [Ward's] finding that she was insubordinate by talking back in a meeting about its submission, and [Ward's] finding that an easily replaceable insurance form was a 'record of the College' and had been destroyed. [Mitchell] did not refuse to file the claim out of any personal animus or willful neglect of her duties. To the contrary, she was concerned that [Lawson State] was submitting what she thought was an improper insurance claim, especially in view [of] her previous attempt to ensure the eligibility of that athlete. While it was not within her abilities or duties to make such a decision she was nonetheless acting, in her view, in her employer's best interests. The importance of this 'record of the College' is belied by the fact that no one ever simply called the student athlete and asked him to file a new one. [Rice] did not testify to any mental anguish from her criticism. No doubt he has suffered much worse abuse in the performance of his duties. This disciplinary action was unduly harsh and *892 severe in view of [Mitchell's] work record, the magnitude of the offenses found to have occurred, and the multitude of disciplinary actions less than termination that could have been imposed."
Citing Ex parte Lambert, 199 So.3d 761 (Ala. 2015), the hearing officer concluded that the decision to terminate Mitchell's employment rose to the level of being arbitrary and capricious and remanded the matter for consideration of a lesser penalty. Lawson State appealed the hearing officer's decision to this court.
On appeal, Lawson State contends that the hearing officer erred in reversing the decision to terminate Mitchell's employment. Specifically, Lawson State says, the hearing officer failed to give Ward's decision the deference he was required to give it pursuant to § 16-24C-6(e), Ala. Code 1975, a section of the SFA. In reversing the decision, Lawson State says, the hearing officer improperly "engaged in fact-finding and interjected speculation as a basis for his decision."
" '[I]t is well established that where the issues involve only the application of law to undisputed facts appellate review is de novo. See, e.g., State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 810 (Ala. 2005). This has been held to be true where a hearing officer's decision is otherwise subject to more limited review. Ex parte Wilbanks Health Care Servs., 986 So.2d 422, 425 (Ala. 2007) ("Review of the hearing officer's conclusions of law or application of the law to the facts is de novo."); Barngrover v. Medical Licensure Comm'n of Alabama, 852 So.2d 147, 152 (Ala. Civ. App. 2002) ("The presumption of correctness does not attach to the hearing officer's conclusions of law; further, no presumption of correctness exists when a hearing officer improperly applied the law to the facts.").'
" Ex parte Soleyn, 33 So.3d 584, 587 (Ala. 2009). See also Huntsville City Bd. of Educ. v. Stranahan, 130 So.3d 204, 206 (Ala. Civ. App. 2013) ('We note that the facts pertaining to this issue are undisputed, and, therefore, the argument involves whether the hearing officers properly applied the law to the undisputed facts. Accordingly, this court reviews this issue de novo.')."
Ex parte Lambert, 199 So.3d at 765.
"The plurality decision in Ex parte Lambert explained that
" 'the arbitrary-and-capricious standard of review applicable to appellate courts reviewing decisions under the [former Teacher Tenure Act, Ala. Code 1975, § 16-24-1 et seq. (repealed),] and the [former Fair Dismissal Act, Ala. Code 1975, § 36-26-100 et seq. (repealed),] now applies to hearing officers' review of employers' decisions under the SFA. The SFA provides that "[a] final ruling, either affirming or reversing the employer, shall be rendered" by the hearing officer. § 16-24C-6(e). "When a hearing officer chooses [a penalty] option other than the cancellation voted for by a board of education, the hearing officer has 'reversed the decision' of the board." Ex parte Wilson, 984 So.2d 1161, 1166 ( [Ala.] 2007). The Court of Civil Appeals correctly recognized in its decision below that "[i]mplicit in giving the hearing officer the authority to reverse a Board's decision is the power to remand the action." Lambert [v. Escambia Cty. Bd. of Educ. ], 199 So.3d [751] at 760 [ (Ala. Civ. App. 2013) ]. Under the arbitrary-and-capricious standard of review, if a hearing officer determines that the sanction imposed by an employer is *893 arbitrary and capricious, the hearing officer may remand the matter with instructions to the employer to impose a lesser penalty.'
" 199 So.3d at 768-69."
Escambia Cty. Bd. of Educ. v. Lambert, 255 So.3d 198, 206 (Ala. Civ. App. 2016).[2]
" 'The arbitrary-and-capricious standard is " ' "extremely deferential," ' " prohibiting the reviewing hearing officer from substituting his judgment for that of the Board. [ Ex parte Lambert, 199 So.3d 761, 767 (Ala. 2015) ] (quoting Ex parte Dunn, 962 So.2d [814,] 816 [ (Ala. 2007) ] (emphasis omitted)). Put another way, " '[w]here "reasonable people could differ as to the wisdom of [the Board's] decision[,] ... the decision is not arbitrary." ' " Id. (quoting Ex parte Dunn, 962 So.2d at 816 ). Traditional definitions of the terms "arbitrary" and "capricious" indicate that few decisions will be found to violate the standard.
" ' " 'A decision is not arbitrary where there is a reasonable justification for the decision or where the determination is founded upon adequate principles or fixed standards.' Sexton v. Tuscaloosa County Civil Serv. Bd., 426 So.2d 432, 435 (Ala. Civ. App. 1983). ' " ' "[A] decision is capricious if it is so unreasonable as to 'shock the sense of justice and indicate lack of fair and careful consideration.' " ' " ' Alabama Dep't of Human Res. v. Dye, 921 So.2d 421, 427 (Ala. Civ. App. 2005) (quoting Westring v. James, 71 Wis.2d 462, 476-77, 238 N.W.2d 695, 702-03 (1976), quoting in turn Scharping v. Johnson, 32 Wis.2d 383, 390, 145 N.W.2d 691, 695 (1966) )."
" ' Alabama Dep't of Youth Servs. v. State Pers. Bd., 7 So.3d 380, 386 (Ala. Civ. App. 2008).'
" Escambia Cty. Bd. of Educ. v. Lambert, 255 So.3d 198, 209 (Ala. Civ. App. 2016)."
J.F. Ingram State Tech. Coll. v. Carter, 227 So.3d 499, 509 (Ala. Civ. App. 2017) (footnote omitted).
In this case, after accepting Ward's factual finding determining that Mitchell had failed to perform her duties in a satisfactory manner and explicitly agreeing with Ward's determination that Mitchell had been insubordinate, the hearing officer then set forth reasons that he apparently believed mitigated Mitchell's conduct. Ward had found that Mitchell had no objectively valid justification for her conduct. Based on his own view of the evidence, however, the hearing officer concluded *894 that, because Mitchell had previously been a good employee and did not act out of malice, termination of her employment was unduly harsh and "not rationally related to her actions." He also concluded that Rice did not suffer mental anguish as a result of Mitchell's comment. Whether Rice did or did not suffer mental anguish is irrelevant to the consideration of whether Ward's decision was appropriate.
"The Board, not the hearing officer, is the entity charged with making factual determinations and with determining the appropriate penalty for violations of its own policies. The hearing officer may reverse the decision of the Board and remand the matter for the entry of a lesser punishment only if the Board's decision is arbitrary or capricious." Escambia Cty. Bd. of Educ. v. Lambert, 255 So.3d at 210 ; see also Carter, supra. We note that, in the context of the administrative proceedings afforded for two-year educational institutions, Ward acted in the same capacity as "the Board" in the quoted authority. See § 16-24C-3(5), Ala. Code 1975.
In his decision, Ward set forth the facts on which his decision was based, and those facts are supported by the record. Based on those facts, Ward concluded that Lawson State had met its burden of demonstrating that Mitchell's conduct constituted insubordination, failure to perform her duties in a satisfactory manner, and/or good and just cause for discipline. Ward also determined that the conduct proven warranted the termination of Mitchell's employment. We cannot say that the disciplinary action Ward took against Mitchell "is so unreasonable as to 'shock the sense of justice and indicate lack of fair and careful consideration.' " Carter, 227 So.3d at 509 (quoting other cases; internal quotation marks omitted).
After reviewing the record and giving Ward's decision the due deference required, we conclude that the decision to terminate Mitchell's employment at Lawson State was not arbitrary and capricious. The hearing officer substituted his judgment for Ward's in deciding that the penalty for Mitchell's conduct was unduly harsh, and, in doing so, he exceeded his authority. Accordingly, the hearing officer's decision is reversed, and we render a judgment reinstating Ward's decision in its entirety.
Lawson State's motion to strike portions of Mitchell's brief is denied as moot.
REVERSED AND JUDGMENT RENDERED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

Crews testified that Rice had showed her a document indicating that the student had had a physical examination. However, Crews did not know the date of that examination.

This court in Escambia County Board of Education v. Lambert referred to the main opinion in Ex parte Lambert as a plurality decision, noting that,
"[a]lthough a majority of the supreme court agreed that the arbitrary-and-capricious standard was the appropriate standard for the hearing officer to apply to his review of the Board's decision, three members of the court opined that the remand to the hearing officer was unnecessary because, as a matter of law, the Board's decision could not be considered arbitrary and capricious. Ex parte Lambert, 199 So.3d 769-70 (Shaw, J., concurring in part and dissenting in part, joined by Stuart and Bolin, JJ.)."
255 So.3d at 202 (footnote omitted). This court also noted that
"[t]wo members of the court opined that the appropriate standard to be applied to review of the Board's decision was a standard 'similar to the "clearly erroneous" standard of review.' Ex parte Lambert, 199 So.3d at 771 (Bryan, J., concurring in part and dissenting in part, joined by Wise, J.). Those justices concurred to reverse the hearing officer's decision and to remand the cause to the hearing officer, but they would have instructed the hearing officer to apply what they believe is the appropriate standard of review."
255 So.3d at 202 n. 1.