MOORE, Chief Justice.
The Escambia County Board of Education (“the Board”) terminated the employment of John 'Lambert, a tenured teacher, as the band director at Flomaton High School for leaving a pistol in his school office, which was locked. A hearing officer subsequently' affirmed the Board’s decision. Lambert appealed and the Court of Civil Appeals affirmed the decision of the hearing officer. Lambert v. Escambia Cnty. Bd. of Educ., 199 So.3d 751 (Ala.Civ.App.2013). Lambert then petitioned this Court for a writ of certiorari. We reverse and remand.

I, Facts

In 1973, Lambert graduated from Troy State University with a degree in music education; he has been teaching music in various capacities since then. He retired from the United States Army in 2002 after serving 27 years. Lambert began teaching at Flomaton High School in 2005, and he taught there until 2012, when his employment was terminated. During the course of his teaching career and military service, Lambert was never charged with neglect of duty, insubordination, or failure to perform duties in a satisfactory manner. Before this incident, no school board had ever taken disciplinary action against Lambert, nor had Scott Hammond, the principal of Flomaton High School, ever disciplined Lambert.
On the morning of Friday, May 11, 2012, Lambert and the Flomaton High School Band were about to depart the school for a band contest near Atlanta, Georgia. Before getting on the bus where the students were waiting for Lambert to join them, Lambert placed a small bag on the desk in his office, which was in the band room. *763 The bag contained personal items, including clothing, tools, Lambert’s checkbook, and 10 20-dollar bills in a folded bank envelope. The bank envelope was in the side pocket of the bag, which was zipped. Lambert placed the bag in his office because he did not want to leave it in his truck overnight while he was away on the band trip.
According to Lambert, he forgot that a loaded Kel-Tec brand .380 automatic pistol and an additional loaded magazine were in a small case at the bottom of the bag. There was no round in the chamber of the pistol. Both the case containing the pistol and the bag were zipped. The bag was black, and it was impossible to identify the contents of the bag from the exterior of the bag. Lambert, who had a permit for the pistol, testified that both his office door and the door to the band room were locked when he left for the band contest at approximately 8:00 a.m.
Shortly after 12:00 p.m. on May 11, Hammond was notified that the school custodian had discovered a gun in the band room. Hammond went to the band room, where the custodian met him and led him into Lambert’s office. The door to Lambert’s office was open, the black bag was open on his desk, and the case containing Lambert’s pistol was visible at the top of the bag. The case was unzipped about one-half inch. After opening the case and seeing the pistol, Hammond removed the pistol from Lambert’s office and notified Randall Little, then the interim superintendent of education for Escambia County, that a gun had been found on the school premises. At the time of the discovery of the pistol, only Lambert, the custodian, and the principal had keys to Lambert’s office.
Little told Hammond to meet Lambert at the school when Lambert returned from his trip with the band. Between 11:30 p.m. on Saturday, May 12, and 12:00 a.m. on the morning of Sunday, May 13, Hammond met Lambert as instructed. Lambert acknowledged that the pistol was his and that he had accidentally left it in his office. Upon inspecting his bag, Lambert discovered that $80 was missing from the bank envelope in the side pocket.
Little placed Lambert on administrative leave effective May 14, 2012. In a letter dated June 1, 2012, Little, who had been awarded a two-year contract as superintendent of education on May 29, notified Lambert that he was recommending to the Board that Lambert’s employment be terminated “on the grounds' of' neglect of duty, insubordination, failure to perform duties in a satisfactory manner, and/or other good and just cause.” See § 16-24C-6(a), Ala.Code. 1975[1] (“Tenured teachers ... may be terminated at any time because of a justifiable decrease in the number of positions or for incompetency, insubordination, neglect of duty, immorality, or failure to perform duties in a satisfactory manner, or other- good and just cause, subject to the rights and procedures hereinafter provided.”); § 16-24C-6(b), Ala. Code 1975 (“The termination of a tenured teacher ... shall be initiated by the recommendation of the chief executive officer in the form of a written notice of proposed termination to the employee.”). As grounds for the termination of Lambert’s employment, Little cited the Board’s Policy No. 826, which provides: “No employee, with the exception of any law enforcement personnel, will be in possession of an unauthorized weapon on any school premises, including school vehicles, or at any school-planned activity. Violation of this policy *764 provision will result in suspension or dismissal of the employee.” The Board adopted Policy No. 826 pursuant to Regulation 290-3-1.02.(l)(b)3., Ala. Admin. Code (State Bd. of Educ.), which provides:
“(b) Effective with the 1995-96 school year and thereafter, local boards of edu- • cation must:

((

“3. Adopt and enforce a uniform policy prohibiting all persons, other than authorized law enforcement personnel, from bringing or possessing any deadly weapon or dangerous instrument on school property and prescribing specific penalties for students and school personnel who violate this policy, notwithstanding any criminal .penalties which may also be imposed.”.
In the June 1, 2012, notice of proposed termination, Little advised Lambert of his right to request a hearing before the Board. Lambert timely requested a hearing, ' see § 16-24C-6(b), Ala.Code 1975, which was held on July 23, 2012. At the hearing, Lambert’s counsel moved to dismiss the proceedings on multiple grounds, including a violation of Lambert’s Second Amendment right to keep and bear arms. He also moved to suppress evidence based on an alleged violation of Lambert’s Fourth Amendment right to be free from unlawful search and seizure. The president of the Board denied Lambert’s motions.
Little testified that he recommended the termination of Lambert’s employment, rather than the lesser penalty of suspension provided for in Policy No. 826, to hold Lambert accountable for creating a “very unsafe environment,” Little testified that teachers, like students, should be held accountable, although he acknowledged that the maximum penalty for a student who brings a weapon onto the school campus is expulsion for one calendar year. Lambert, through counsel, did not contest his culpability for violating Policy No. 826 but argued that his favorable record and contribution to thé Escambia County school system militated in favor of suspension rather than dismissal. Multiple witnesses testified as to Lambert’s' good character, and 18 additional witnesses were prepared to do the same. The Board’s attorneys argued that evidence of Lambert’s character was not relevant, while Lambert’s attorney contended that character evidence was indeed relevant to the question of punishment. After receiving exhibits and hearing witnesses and arguments of counsel, the Board terminated Lambert’s employment by a vote of six to one. In its findings of fact, the Board concluded that Lambert had violated Policy No. 826, but the Board neither referenced evidence relevant to Lambert’s character and prior employment history nor explained its decision to select dismissal as a punishment instead of the lesser penalty of suspension.
Lambert timely appealed the Board’s decision to a hearing officer pursuant to § 16-24C-6(e), Ala.Code 1975. The hearing officer stated in his decision:
“It is clear from the [hearing] transcript that [Lambert] violated School Board policy by possessing a firearm on school premises and that the Board had the authority to terminate him.
“In view of [Lambert’s] service of 37 years and his exemplary record as evidenced by the many witnesses examined, it is the opinion of this Hearing Office [sic] that a lesser penalty than termination should have' been im-posedf] however, the Student’s [sic] First Act of 2011 provides that the Hearing Officer may affirm or reverse the decision of the Board only, no modification is authorized.
*765 “THEREFORE, the decision of the Escambia County School Board to terminate [Lambert] is AFFIRMED.”
(Emphasis added.) Lambert appealed the decision of the hearing officer to the Court of Civil Appeals. Lambert argued before that court, among other things, that Policy No. 826 violated the Second Amendment to the United States Constitution and that his motion to suppress evidence made pursuant to the Fourth Amendment should have been granted. Lambert also argued that the hearing officer accorded too much deference to the Board’s decision and erred by failing to recognize that he was permitted to reverse the Board’s decision and remand the action for the imposition of a lesser punishment. The Court of Civil Appeals rejected Lambert’s arguments and affirmed the decision of the hearing officer. Lambert petitioned this Court for certiorari review, which we granted.

II. Standard of Review

“[I]t is well established that where the issues involve only the application of law to undisputed facts appellate review is de novo. See, e.g., State Farm, Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 810 (Ala.2005). This has been held to be true where a hearing officer’s decision is otherwise subject to more limited review. Ex parte Wilbanks Health Care SeRVs., 986 So.2d 422, 425 (Ala.2007) (‘Review of the hearing officer’s conclusions of law or application of the law to the facts is de novo.’’); Barngrover v. Medical Licensure Comm’n of Alabama, 852 So.2d 147, 152 (Ala.Civ.App.2002) (‘The presumption of correctness does not attach to the hearing officer’s conclusions of law; further, no presumption of correctness exists when a hearing officer improperly applied the law to the facts.’).”
Ex parte Soleyn, 33 So.3d 584, 587 (Ala.2009). See also Huntsville City Bd. of Educ. v. Stranahan, 130 So.3d 204, 206 (Ala.Civ.App.2013) (“We note that the facts pertaining to this issue are undisputed, and, therefore, the argument involves whether the hearing officers properly applied the law to the undisputed facts. Accordingly, this court reviews this issue de novo.”). We are not required to resolve any factual disputes in order to answer the questions of law presented in this case. Our review is therefore de novo.

III. Analysis

On appeal, Lambert does not challenge the Board’s finding that he was culpable for violating Policy No. 826; he challenges only the sanction imposed. Lambert does not challenge the constitutionality, facially or as applied, of Policy No. 826. Rather, Lambert raises a question of first impression: What standard of reviéw must a hearing officer apply when considering a tenured teacher’s appeal under the Students First Act of 2011, Act No. 2011-270, Ala. Acts 2011, codified at § 16-24C-1 et seq., Ala.Code 1975 (“the SFA”), of a decision to terminate the teacher’s employment? The parties dispute the meaning of the provision of the SFA governing the standard a hearing officer must apply when reviewing a decision to terminate a teacher’s employment: “Deference is given to the decision of the employer. A final ruling, either affirming or reversing the employer, shall be rendered within five days after the hearing.” § 16-24C-6(e), Ala.Code 1975. The Board argues that the SFA requires hearing officers to apply the arbitrary-and-caprieious standard of review to the employer’s decision. Lambert, on the other hand, argues that the SFA requires hearing officers to give challenged decisions a level of deference that is lower than the extremely high level of deference mandated by the arbitrary-and-capricious standard of review. The Board *766 argues that termination of Lambert’s employment was reasonable in light of-the risk posed by Lambert’s leaving a loaded gun on the school premises. Lambert argues that, even if the arbitrary-and-capricious standard of review is applied, the Board erred by failing to- give meaningful consideration to his favorable record and his contributions to students and the school system and by dismissing, rather than suspending, him.
In determining the applicable standard of review under the SFA for a hearing officer reviewing an employer’s decision, we are guided by the plain language of the SFA, considered in the context of prior law. In § 16-24C-6(n), Ala.Code 1975, the SFA sets forth guidelines for construing § 16-24C-6:
“The repealer provisions of Act 2011-270 notwithstanding, and except as expressly provided otherwise in this chapter, the terms and phrases used ... in subsection (f) to describe the standards by which decisions of the employer are to be reviewed by hearing officers shall be deemed to carry the meanings traditionally accorded the terms and phrases by the appellate courts of this state under prior law.”
(Emphasis added.) As the Court of Civil Appeals has noted, however, “subsection (f) of § 16-24C-6 does not contain a reference to the ‘standards by which decisions of the employer are to be reviewed by hearing officers.’” Chilton Cnty. Bd. of Educ. v. Cahalane, 117 So.3d 363, 367 (Ala.Civ.App.2012). Rather, those standards are contained in subsection (e), which provides: “Deference is given to the decision of the employer. A final ruling, either affirming or reversing the decision of the employer, shall be rendered within five days after the hearing.”
Lambert argues that the reference in § 16-24C-6(n) to subsection (f) is a drafting error and that the legislature would have expressly provided for the application of the arbitrary-and-eapricious standard of review to the employer’s decision had it intended to do so. Lambert argues that the so-called drafting error in subsection (n) is a vestige of a bill, which the legislature ultimately rejected, that expressly provided for review by a hearing officer to determine whether the employer’s action was arbitrary and capricious or an abuse of discretion. The Board, however, argues that subsection (n) imports the arbitrary-and-capricious standard from prior law into the SFA.
“We must take acts of the Legislature as we find them, unless an obvious error in drafting has occurred. In Ex parte Welch, 519 So.2d 517 (Ala.1987), this Court held:
“ ‘ “A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.”’
“519 So.2d at 519 (quoting 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 46.06 (4th ed.1984)). See also Guy H. James Constr. Co. v. Boswell, 366 So.2d 271, 273 (Ala.1979) (‘An obvious error in the language of a statute is self-correcting. State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974). In such an instance, the court may substitute the correct word when it can be ascertained from the context of the act. C. Sands, 2A Sutherland Statutes and Statutory Construction § 47.36 (1973).’).”
Ex parte Wilson, 854 So.2d 1106, 1110-11 (Ala.2002). The SFA explicitly refers to “terms and phrases used ... to describe the standards by which decisions of the *767 employer are to be reviewed by hearing officers.” § 16-24C-6(n). Because the language describing such standards is contained in subsection (e), we acknowledge the reference to “subsection (f)” in subsection (n) to be an obvious drafting error. As required by subsection (n), we now turn to appellate decisions under prior law to determine what meaning to accord the term “deference” as that term is used in subsection (e).
The SFA is distinct from its predecessors in two relevant respects. First, under both the former Teacher Tenure Act, § 16-24-1 et seq., Ala.Code 1975 (“the TTA”) (repealed), and the former Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975 (“the FDA”) (repealed), “the hearing officer was the finder of fact, and the hearing officer’s decision regarding disputed facts was entitled to deference.” Caha-lane, 117 So.Sd at 366. By contrast, under the SFA, the employer — here the Board— is now the fact-finder, and the hearing officer functions as an appellate tribunal subject to further appellate review by the Court of Civil Appeals. See § 16-24C-6(e) and (f), Ala.Code 1975. Consequently, the standards by which appellate courts reviewed the decisions of hearing officers under the TTA and the FDA are instructive in determining the standard of review by which hearing officers must now review the decisions of employers. Second, unlike the SFA, both the TTA and the FDA expressly provided that the decision of the fact-finder was subject to review to determine whether the decision was arbitrary and capricious. See former § 16-24-10(b), Ala.Code 1975 (repealed) (“The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious .... ”); and former § 36-26-104(b), Ala.Code 1975 (repealed) (same).
Therefore, under the TTA, the deference a reviewing body afforded the decision of the fact-finder was equivalent to the arbitrary-and-capricious standard of review.
“[T]he arbitrary-and-capricious standard of review is ‘extremely deferential,’ and ... the reviewing court may not substitute its judgment for that of the hearing officer.... [Wjhere ‘reasonable people could differ as to the wisdom of a hearing officer’s decision[,] .., the decision is not arbitrary.’ ...
“ ‘If the decision-maker has “ ‘examined the relevant data and articulated a satisfactory explanation for its action, including a “rational connection between the facts found and the choice made,” ’ ” its decision is not arbitrary.’ ”
Ex parte Dunn, 962 So.2d 814, 816-17 (Ala.2007) (construing the,TTA) (emphasis added; citations omitted). The deference a reviewing body afforded the fact-finder under the FDA was likewise the equivalent of the arbitrary-and-capricious standard of review:
“In employing the arbitrary-and-capricious standard of review, the legislature intended this court to be ‘extremely deferential ’ to the hearing officer’s decision in an FDA case. See Ex parte Dunn, 962 So.2d 814, 816 (Ala.2007) (construing arbitrary-and-capricious standard of review mandated by Teacher Tenure Act).
[[Image here]]
“... Pursuant to the arbitrary-and-capricious standard of review, this court may ‘disagree with the wisdom of the decision, [but] we may not substitute our judgment for that of the hearing officer.’ Ex parte Dunn, 962 So.2d at 823-24.”
Bishop State Cmty. Coll. v. Thomas, 13 So.3d 978, 986 (Ala.Civ.App.2008) (emphasis added). Thus, under ,the predecessors *768 to the SFA, the term “deference” referred to a review to determine whether the action by the fact-finder was arbitrary and capricious.
Lambert argues that, although the term “extreme deference” may be synonymous with the arbitrary-and-capricious standard of review, the unmodified word “deference” used in § 16-24C-6(e) encompasses a spectrum of standards of review, some more deferential than others. Lambert argues that by abandoning in the SFA the express requirement of the application of arbitrary-and-capricious review found in the TTA and the FDA, the legislature provided that hearing officers are to give challenged decisions “moderate” deference while “retaining] the power to exercise independent judgment.”
We reject Lambert’s argument. The SFA explicitly directs us to apply “meanings traditionally accorded the terms and phrases by the appellate courts of this state under prior law,” § 16-24C-6(n), in determining the applicable standard of review.- We are not inclined to force a distinction between “deference” and “extreme deference” in order to manufacture a hybrid standard of review when the SFA mandates that we apply traditional legal definitions. In the context of appellate review of teacher-termination cases, “deference” traditionally referred to an .arbitrary-and-capricious standard of review, whether or not the word “deference” was modified by the adjective “extreme.”
We agree with the Court of Civil Appeals that applying the arbitrary-and-capricious standard of review to challenged decisions in teacher-termination cases accords with the legislature’s stated purposes in enacting the SFA:
“[T]he legislature has specifically stated that it intended for the SFA to ‘[r]e-stor[e] primary authority and responsibility for maintaining a competent educational workforce’ to school boards, § 16-24C-2(2), [Ala. Code 1975,] and further stated that its objective was to ‘[e]liminat[e] costly, cumbersome, and counterproductive legal challenges to routine personnel decisions by simplifying administrative adjudication and review of contested personnel decisions,’ § 16 — 24C—2(5)[, Ala. Code 1975]. Because we have applied the arbitrary and capricious standard to teacher-termination appeals arising under the SFA based on its historical application in the fact-finder’s decisions in teacher-termination cases, see Cahalane, 117 So.3d at 366 (collecting cases), and because of what we perceive to be the legislature’s intent that personnel decisions of school boards be given deference to support the legislators stated objective in the SFA of placing control over maintaining a competent teaching force with those boards, we reject [the teacher’s] contention that the declaration in the SFA that the decision of a school board be given deference indicates that the legislature desired ,that a less deferential standard of review than ‘arbitrary and capricious’ govern a hearing officer’s review of an appeal from a school board’s decision.”
Huntsville City Bd. of Educ. v. Jacobs, 194 So.3d 929, 939 (Ala.Civ.App.2014). We hold that the arbitrary-and-capricious standard of review applicable to appellate courts reviewing decisions under the TTA and the FDA now applies to hearing officers’ review of employers’ decisions under the SFA. The SFA provides that “[a] final ruling, either affirming or reversing the employer, shall be rendered” by the hearing officer. ' § 16-24C-6(e). “When a hearing officer chooses [a penalty] option other than the cancellation voted for by a board of education, the hearing officer has ‘reversed the decision’ of the board.” Ex parte Wilson, 984 So.2d 1161, 1166 (2007). *769 The Court of Civil Appeals correctly recognized in its decision below that “[ijmplic-it in giving the hearing officer the authority to reverse a Board’s decision is the power to remand the action.” Lambert, 199 So.3d at 760. Under the arbitrary- and-capricious standard of review, if a hearing officer determines that the sanction imposed by an employer is arbitrary and capricious, the hearing officer may remand the matter with instructions to the employer to impose a lesser penalty.

TV. Conclusion

In light of the fact that this Court has resolved, as a material question of first impression, the standard of review a hearing officer is to apply to an employer’s decision to terminate the employment of a tenured teacher, we reverse the judgment of the Court of Civil Appeals and remand the cause to that court to, in turn, reverse the judgment of the hearing officer and remand the cause to him with instructions to review the sanction imposed against Lambert under the arbitraryr-and-capri-cious standard of review as that standard is articulated in this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PARKER, MURDOCK, and MAIN, JJ., concur.
STUART, BOLIN, SHAW, WISE, and BRYAN, JJ., concur in part and dissent in part.

. The quoted provisions from Chapter 24C of Title 16 of the Alabama Code of 1975 are part of the Students First Act of 2011, discussed infra.